516

Joseph M. CAIN
v.
The UNITED STATES.
No. 50418.

United States Court of Claims.
Nov. 8, 1955.

Albert B. Arbaugh, Canton, Ohio, for plaintiff.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen., H. Brian Holland, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and LARAMORE, Judges.

JONES, Chief Judge.

This is a suit for refund of additional income taxes which plaintiff claims were improperly assessed for the years 1943 and 1944. The amount claimed as overpayment is $72,979.77.

The plaintiff has been a licensed dentist since the year 1915 and has been practicing in Canton, Ohio. Upon graduation in that year he became a partner of his father, Dr. H. O. Cain. The father, Dr. H. O. Cain, gradually withdrew from the practice of dentistry until 1941 at which time he began devoting his entire time to banking matters. The partnership name, however, Cain & Cain, was continued in use by the plaintiff who from time to time employed other dentists on a salary. He also operated a dental laboratory for the making of artificial dentures.

The plaintiff's son, Dr. Charles C. Cain, was born July 10, 1916. From the time of his birth the plaintiff had anticipated his son's entry into the partnership with plaintiff in the practice of dentistry and held out the prospect of such

a partnership as an inducement to Charles C. Cain to prepare himself well for the profession.

The son was graduated from dental school in June 1942 and was admitted to practice his profession on August 5, 1942. The war was on and while in dental school Dr. Charles C. Cain received a Navy commission as a probationary ensign and was commissioned a lieutenant (jg) in the Navy on October 30, 1942, and was immediately called up for service and left Canton on Navy duty on December 5, 1942. He was absent from Canton on Navy duty except for two or three brief leaves until October 26, 1944.

Soon after his admission to practice dentistry in August 1942 Dr. Charles C. Cain became a salaried employee of his father who was then operating under the name of Cain & Cain. His name was placed on the office door at that time.

Some time between September 1, 1942, and January 1, 1943, an undated partnership agreement was signed between plaintiff Joseph M. Cain and his son, Charles C. Cain. Pertinent provisions of this agreement are set out in finding 5. According to its terms the plaintiff, Joseph M. Cain, was to contribute all the capital and equipment in the business that he had been conducting in the city of Canton, together with all the stock and merchandise used in the business, together with his experience and ability, and his son, Charles C. Cain, was to contribute all his knowledge, skill and ability, and both of such parties were to give all their time, experience and ability in the conduct and management of the business.

The contract by its terms was to become effective January 1, 1943. In the meantime, between August 1942, when he entered his father's office and the time he was called into the service on December 5, 1942, Dr. Charles C. Cain had married and the contract provided that in the event of the son's death all the property belonging to the partnership and used in carrying on the business, including the equipment, all stock in trade and all accounts and bank deposits, should immediately revert to and become the sole property of the plaintiff, Joseph M. Cain, the senior member of the partnership, including all the profits of the partnership at such time whether divided or not, and that the son's heirs, administrators, executors or assigns should have no interest therein. The contract further provided that in the event of the death of Joseph M. Cain, the senior member of the firm, his interest in the same should be administered according to law.

It was further provided that all monies received by the firm should be deposited in the First Trust and Savings Bank of Canton, Ohio, and each of the partners should have the right to write and execute checks on such account in the conduct and management of the business. The names of all three of the Cains were placed on the printed checks of Cain & Cain prior to January 7, 1943, and the grandfather, father, and son were authorized to sign checks. During the period, however, from August 1942 until early November 1944, no checks were drawn on such bank account by Dr. Charles C. Cain.

From December 5, 1942, to October 30, 1944, Dr. Charles C. Cain took no part in the operation or management of Cain & Cain except for minor services during two or three brief leaves from the Navy.

On October 30, 1944, Dr. Charles C. Cain, having returned from the service, practiced his profession with plaintiff in Canton, exercising all the rights, performing all the duties, and sharing equally in all profits of the business until August 1952 when his younger brother, Joseph H. Cain, became an additional partner.

The original agreement between plaintiff and Dr. Charles C. Cain had been cancelled in 1945 and a new agreement had been entered into providing for a new copartnership between plaintiff and Dr. Charles C. Cain without any restriction on Dr. Charles C. Cain's interest in the income or assets of the firm.

Dr. Joseph M. Cain called in an accountant who set up the usual account books for a partnership beginning Jan-

**518**

uary 1, 1943. Such books were maintained under the partnership name of Cain & Cain during all times material to this case. For the years 1943 and 1944 income tax returns were filed showing distributable income of the business in the amounts of $70,346.36 and $89,283.30 for those respective years. These amounts were shown to be distributable one-half to each partner, Joseph M. Cain and Charles C. Cain.

Plaintiff filed these returns and paid the taxes shown due thereon for himself and also caused to be filed a similar return in the name of his son, Dr. Charles C. Cain. He paid the taxes for each by check, charging the check for his son's taxes to the drawing account of Dr. Charles C. Cain.

In May 1947 the Commissioner of Internal Revenue ruled that no bona fide partnership recognizable for income tax purposes existed between Dr. Joseph M. Cain and Dr. Charles C. Cain in the years 1943 and 1944. He levied additional assessments against Dr. Joseph M. Cain, charging him with the entire receipts, together with interest on the deficiency assessment. The details are set out in findings 11, 12, 13, 14, 15 and 16. Credit was given against the additional assessment by the application of the payment that had been made in the name of Charles C. Cain, which had first been placed in a suspension account. The final adjustment was made on April 26, 1948.

On March 13, 1950, plaintiff filed claims for refund for the years 1943 and 1944.

Plaintiff's claim for refund for the year 1944 was rejected on November 17, 1950. At the time of filing the petition the refund claim for the year 1943 had not been acted on.

Plaintiff sues for the refund which he claims is due for each each of the two years.

Both parties have cited the decision of the Supreme Court in the case of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. After a careful reading of the decision in that case we do not believe that plaintiff brings himself within the framework of that decision for the period between January 1, 1943, and October 30, 1944. We quote the following language from pages 739, 740, and 742 of 337 U.S., at page 1213 of 69 S.Ct.:

" * * * If it is conceded that some of the partners contributed neither capital nor services to the partnership during the tax years in question, * * * it can hardly be contended that they are in any way responsible for the production of income during those years.[1] * * *

To hold that 'Individuals carrying on business in partnership' includes persons who contribute nothing during the tax period would violate the first principle of income taxation: that income must be taxed to him who earns it. Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; National Carbide Corp. v. Com-

1. Of course one who has been a bona fide partner does not lose that status when he is called into military or government service, and the Commissioner has not so contended. On the other hand, one hardly becomes a partner in the conventional sense merely because he might have done so had he not been called. The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case [Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532. 90 L.Ed. 670], but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

missioner, 1949, 336 U.S. 422, 69 S. Ct. 726, [93 L.Ed. 779].

" * * * The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22(a) of the Code that he who presently earns the income through his own labor, and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income. * * * "

The facts in the instant case are clearly distinguishable in vital respects from the facts in the Culbertson case.

The facts in the Culbertson case show that for many years prior to 1939 the firm of W. O. Culbertson and R. S. Coon had operated a cattle business. At that time Culbertson was 79 years old and in ill health, and decided to dissolve the partnership. The major portion of the cattle was sold, leaving only about 1,500 head of registered Herefords which Culbertson wished to keep, and for which he offered Coon $65 per head. Coon agreed to sell at that price, but only on condition that Culbertson would sell an undivided one-half interest to his four sons at the same price. His reasons for imposing the condition were his intense interest in maintaining the strain which he and Culbertson had developed, his conviction that Culbertson was too old to carry on the work alone, and his personal interest in the Culbertson boys. The deal was made and two days later Culbertson sold an undivided one-half interest to the four boys and the following day they gave their father a note for $49,720 at 4 percent interest, due one year from date. The note was later increased to cover an additional purchase. It was paid partly by gift from the respondent, but the major portion was paid from the profits from the operation of the ranch.

At the time of the formation of the new partnership Culbertson's oldest son was 24 years old, married and living on the ranch. For the previous two years he had been foreman under the Coon and Culbertson partnership. He was a college graduate and received $100 per month, plus board and lodging for himself and his wife both before and after the formation of Culbertson and Sons, and until he entered the Army. The second son was 22 years old and finished college in 1940, the first year during which the new partnership operated. He went directly into the Army following his graduation and rendered no services to the partnership before entering the service. The two younger sons, who were 18 and 16 years old, respectively, in 1940, went to school in the winter and worked on the ranch during the summer.

In the instant case the plaintiff's son, Dr. Charles C. Cain, worked for his father's firm on a salary from early August until he was called into the service on December 5, 1942. At the time of signing the agreement some time after September 1, 1942, he and his father had full knowledge that he was to be called into the service; in fact, he had received a commission as probationary ensign while still in dental school prior to the signing of the agreement and was commissioned a lieutenant (jg) in the Navy on October 30, 1942. Both father and son knew that he would be called into the service. The agreement by its terms was to be effective January 1, 1943. Both plaintiff and his son knew that he would not be able to make any contribution to the partnership as such until after his return from the service. The father took pains by the terms of the agreement to provide that should the son die during his period of service all of the equipment, all of the property of the partnership should immediately revert to plaintiff.

We do not believe the facts justify a division of the profits of the firm during the period of the son's service.

We have no doubt that the father had all along planned from the date of Charles' birth for him ultimately to become a member of the firm. We have no doubt that the young man from the day

he reached the years of discretion probably had the same intention.

■ We find that notwithstanding the effective date recited in the agreement it remained executory until Charles C. Cain returned from the service in October 1944.

There are additional facts that tend to justify this conclusion. Some time during the year 1945 the old agreement was discarded and a new and full time partnership was established without the restrictions which were contained in the old agreement as to the reversion of the son's interest in the firm.

During all the period of the son's service prior to October 30, 1944, he did not write any checks on the firm's account. The father paid the son's income tax as shown on the return which he had prepared. He paid some premiums on the son's insurance. He paid for a trailer to be sent to the son, costing some $700; all these items were paid by checks written by the plaintiff and charged to the account of the son.

When the younger brother entered the firm of Cain & Cain in 1952 and the partnership books were closed, the plaintiff's investment account was overdrawn on the books of the firm by $31,652.53 and there stood to the credit of Dr. Charles C. Cain the sum of $34,898.14. The plaintiff gave to Charles C. Cain a note in the sum of $66,550.67 which eliminated plaintiff's deficit and entitled him to the balance standing to the credit of Dr. Charles C. Cain. By September 1954, when the proof in this case was closed, the above note had not been paid.

In the light of all the facts and circumstances we find that no real contribution was made by the son, Charles C. Cain, until he returned from the service and took up his work on October 30, 1944; that the full control of the business in reality was retained by the plaintiff, and that the Commissioner of Internal Revenue properly charged the profits during that period to the plaintiff.

In the light of the new contract that was signed in 1945 without restriction the Collector of Internal Revenue permitted the filing of returns by the individual partners on the basis of a full partnership, effective January 1, 1945.

■ We find that since Dr. Charles C. Cain returned and became fully active in the firm on October 30, 1944, writing checks, performing professional services, participating in the management, and acting the part of a full-time partner, the plaintiff should have been permitted to file partnership returns for the period from October 30, 1944, to January 1, 1945.

Plaintiff is entitled to judgment for the overpayment for that particular period. The record does not justify a refund for any other part of the period claimed.

Judgment is suspended pending the filing of a stipulation by the parties as to the amount of the refund as calculated on a partnership basis for that period of slightly more than two months. In the absence of such a stipulation the case will be referred to a commissioner of this court for the taking of further evidence limited to the proper refund for that particular period.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges concur.